UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

| | |
|---|---|
| ASHLEY O'NEIL,<br><br>　　　　　　　　Plaintiff,<br>v.<br>LAS VEGAS METROPOLITAN POLICE DEPARTMENT, *et al.*,<br>　　　　　　　　Defendants. | Case No. 2:22-cv-00474-ART-BNW<br><br>ORDER |

Plaintiff Ashley O'Neil states that she suffered severe injuries in a motor vehicle crash on or about December 22, 2019. She alleges that she was placed under arrest at the scene of the collision and that the defendants failed to take steps to follow the plan of medical care prescribed for her while she was in pretrial custody, which caused her unnecessary suffering and permanent disfigurement. Before the Court are: (1) Defendant Wellpath, LLC's ("Wellpath") motion to dismiss the claims against it (ECF No. 7) because Wellpath is an "immune contractor" under Nevada law, for failure to plead factual allegations against Wellpath, failure to plead that Wellpath is a person suable under *Monell v. Department of Social Servs.*, 436 U.S. 658 (1978), and because Plaintiff's state law claims against Wellpath fail under state law; and (2) Defendants Las Vegas Metropolitan Police Department ("LVMPD") and Sheriff Joe Lombardo's (together "LVMPD Defendants") motion to dismiss (ECF No. 14) certain claims against them for failure to plead the personal involvement of Sheriff Lombardo, for the inapplicability of the Fourth and Eighth Amendments, for redundancy, and for failure to state a claim. For the reasons set forth in this order, the Court grants in part and denies in part both motions to dismiss.

///

## I. BACKGROUND

Plaintiff filed her complaint in the District Court of Clark County, Nevada, on December 22, 2021 (ECF No. 1 Exh. B ("Complaint")), and Defendant Wellpath removed the case to this Court on March 16, 2022 (ECF No. 1). According to Plaintiff's complaint, she was driving her vehicle and suffered severe injuries in a crash on or about December 22, 2019. (Complaint at ¶ 17.) She was placed under arrest and taken by ambulance to University Medical Center Trauma, where she was diagnosed with a splenic laceration, liver laceration, acute respiratory failure, knee laceration, eyebrow laceration, laceration of right great toe without foreign body present or damage to nail, closed fracture of distal end of right tibia, closed fracture of distal end of right fibula, and displaced fracture of proximal phalanx of right great toe. (*Id.* at ¶¶ 18-20.) She received orthopedic surgery on that date, then on December 24, 2019 was cleared for discharge with a non-weight bearing status for her right leg. (*Id.* at ¶¶ 21-22.) Plaintiff alleges that LVMPD and/or the Clark County Detention Center ("CCDC") were instructed that she would need orthopedic surgery in 1-2 weeks for permanent surgical fixation. (*Id.* at ¶ 23.) This surgery occurred on January 3, 2020,[1] and she was discharged back to CCDC on January 5, 2020. (*Id.* at ¶¶ 25-26.)

Plaintiff alleges that upon her discharge, instructions were given to LVMPD and/or CCDC that she needed a follow-up appointment in 1-2 weeks. (*Id.* at ¶ 27.) Plaintiff states that she was seen by CCDC medical staff on January 13, 2020, where the staples in her knee and stitches in her upper eyelid were removed. (*Id.* at ¶ 29.) Plaintiff alleges that she was prescribed Tylenol 3's and was given them for seven days, at which point CCDC medical staff stopped giving her the medication despite her still being in pain. (*Id.* at ¶ 30.) Thereafter, a few days before the anticipated date of her 2-week follow-up, Plaintiff asked Nurse

---

[1] Although paragraphs 25 and 26 of Plaintiff's complaint contain the dates of January 3, 2019, and January 5, 2019, respectively, it is apparent that the year 2020 is intended. (*See id.* at ¶ 29.)

2

"Coco" if the follow-up had been scheduled, and Nurse Coco allegedly responded, "we'll schedule it on our own time." (*Id.* at ¶ 31.)

Plaintiff alleges that no appointment had been scheduled and that she had not been seen by doctors as of February 3, 2020, a month after her surgery. (*Id.* at ¶ 32.) Plaintiff states that on February 10, 2020, she alerted custodial persons at CCDC, including Wellpath and LVMPD employees and Nurse Coco, that the staples under her cast were irritating her leg. (*Id.* at ¶ 33.) She was seen by Nurse Coco on February 12, 2020, and the cast on her leg was removed, revealing that her leg was severely swollen with two big abscesses coming up through her stitches. (*Id.* at ¶¶ 34-35.) "Defendant Employees" [sic] allegedly dug the stitches out from under the abscesses with an unknown instrument and without any anesthesia, causing fluid to leak out of Plaintiff's leg. (*Id.* at ¶ 36.)

Plaintiff was then taken back to University Medical Center for medical evaluation and tested positive for sepsis. (*Id.* at ¶ 37.) Plaintiff underwent surgery to remove the abscesses and clean the hardware inside her leg on February 13, 2020. (*Id.* at ¶ 39.) On February 14, 2020, Plaintiff had a consultation for surgical wound infection of her right leg with likely infected hardware, and on February 15, 2020,[2] Plaintiff underwent incision and drainage of her right ankle. (*Id.* at ¶¶ 40-41.)

Plaintiff was released back into Defendants' custody on February 19, 2020, with instructions to follow up in 1-2 weeks and with a prescription for antibiotics which Plaintiff was required to take every day for 40 days. (*Id.* at ¶¶ 42-43.) Plaintiff alleges that she was not seen by "Defendant Employees" for over a week and was never provided her prescription antibiotics, nor was she given her required physical therapy exercises. (*Id.* at ¶¶ 44-45.)

On March 15, 2021, Plaintiff underwent a surgical removal of hardware

---

[2] Again, paragraphs 41 and 42 of the complaint contain the dates of February 15, 2019, and February 19, 2019, respectively, but it is apparent that the year 2020 is intended. (*See id.* at ¶ 40.)

and fusion of her right ankle, where it was noted that Plaintiff had "a significant deformity[,]" and a bone graft was inserted in order to stimulate new bone healing. (*Id.* at ¶¶ 46-47.) Plaintiff was allegedly again directed to receive a follow-up appointment in 2 weeks, but no action was taken and Plaintiff was not seen until nearly a month later on April 13, 2021. (*Id.* at ¶¶ 48-49.)

Plaintiff alleges that she has suffered permanent damage to her leg, ankle, and foot due to the deliberate indifference of Defendants. (*Id.* at ¶¶ 54-55.) Plaintiff alleges that CCDC, LVMPD, Sheriff Lombardo, and Wellpath "maintain unconstitutional policies and customs regarding providing emergency and/or higher-level health care to inmates in a timely manner[,]" including "not having inmates seen or evaluated by higher level medical providers even when necessary to prevent serious injury or death; allowing and training nurses to practice outside their nursing scope; refusing to transfer inmates to higher level of acuity even where necessary to prevent serious injury or death; and, a widespread custom and tolerated practice and habit of treating all inmate detainee illnesses as fabricated, feigned, or not serious until an inmate/detainee can prove otherwise, often to save money on providers and testing." (*Id.* at ¶¶ 63-64.) Plaintiff alleges that Defendant Wellpath has a contractual relationship with LVMPD and/or CCDC to provide medical services to detainees at CCDC. (*Id.* at ¶ 6.)

Plaintiff names as Defendants LVMPD, CCDC, Sheriff Lombardo both individually and in his official capacity, Wellpath, Doe Nurse Coco, and Doe Officers and Nurses. (*Id.* at ¶¶ 2-9.) Plaintiff brings nine claims: (1) a claim under 42 U.S.C. § 1983 against all Defendants for violation of the Fourth, Eighth, and Fourteenth Amendments; (2) a § 1983 claim against all Defendants for violation of the Eighth Amendment; (3) a negligence claim against all Defendants; (4) a *Monell* claim for failure to train against Defendants LVMPD, CCDC, Sheriff Lombardo, and Wellpath; (5) a *Monell* claim against Defendants LVMPD, CCDC,

Sheriff Lombardo, and Wellpath; (6) a claim for violation of the Nevada Constitution against all Defendants; (7) a claim for negligent hiring, training, supervision, and retention against Defendants LVMPD, CCDC, and Wellpath; (8) a concert of action claim against all Defendants; and (9) a claim for negligent infliction of emotional distress against all Defendants.

## II.   WELLPATH MOTION TO DISMISS

Defendant Wellpath filed its motion to dismiss on March 23, 2022. (ECF No. 7.) Defendant Wellpath seeks dismissal of all the claims against it and makes four arguments: (1) Wellpath is an "immune contractor" under NRS 41.0307; (2) Plaintiff fails to plead any specific factual allegations against Wellpath; (3) Plaintiff fails to plead how Wellpath, a private corporation, is a person suable under *Monell*; and (4) Plaintiff's state law claims fail under state law. Wellpath also argues that Plaintiff has not pled allegations sufficient to seek punitive damages.

### A.   IMMUNE CONTRACTOR

Wellpath argues that it is an immune contractor for the purposes of chapter 41 of the Nevada Revised Statutes. NRS 41.0307(3) defines "immune contractor" to mean "any natural person, professional corporation or professional association which[ i]s an independent contractor with the State [and c]ontracts to provide medical services for the Department of Corrections." However, Plaintiff alleges that Wellpath contracted with Clark County viz. LVMPD to provide services for CCDC. (Complaint at ¶ 6; *see* ECF No. 17-1 at 1.) Neither LVMPD nor CCDC are under the auspices of the Nevada Department of Corrections, therefore Wellpath is not an immune contractor. *See Allen v. Clark Cnty. Det. Ctr.*, 2012 WL 395646, at *6 n.2 (D. Nev. Feb. 7, 2012) (rejecting argument that NRS 41.0307(3) applies to a contractor of CCDC).

### B.   FACTUAL ALLEGATIONS

Wellpath argues that Plaintiff does not provide any factual allegations detailing Wellpath's role in a constitutional violation. Wellpath points to the fact

5

1  that the actions described in Plaintiff's complaint were taken by Doe Nurses and
2  Officers, including Doe Nurse Coco, and that Plaintiff alleges that Sheriff
3  Lombardo was responsible for these Doe Nurses and Officers, noting that
4  respondeat superior liability is not available under § 1983. (*See* ECF No. 7 at 6-
5  7.) However, as Plaintiff points out, Plaintiff's allegations against Wellpath are
6  that Wellpath injured Plaintiff by and through its failure to adopt policies and
7  train employees to ensure that adequate medical care was provided. (ECF No. 17
8  at 7 (citing Complaint at ¶¶ 62, 83, 117).) Plaintiff alleges that Wellpath was
9  contracted to provide health care services to CCDC inmates, so the fact that it is
10 unclear who, exactly, was responsible for the Doe Nurses and Officers, including
11 Doe Nurse Coco, is part of Plaintiff's allegations. Discovery is warranted to
12 illuminate these policies and relationships.

### C. *MONELL*

Wellpath argues that Plaintiff has not adequately pled that Wellpath, being a private corporation, is suable as a "person" for *Monell* purposes. However, this Court has long recognized that Wellpath is subject to *Monell* liability. *See, e.g.*, *Crawley v. Naphcare*, 2021 WL 8016002, at *4 (D. Nev. May 11, 2021) (citing *Tsao v. Desert Palace, Inc.*, 698 F.3d 1128, 1139 (9th Cir. 2012)); *see also Villegas v. Gilroy Garlic Festival Ass'n*, 541 F.3d 950, 954–55 (9th Cir. 2008) (citing *Lugar v. Edmondson Oil Co.*, 457 U.S. 922 (1982)) (describing the "close nexus" test and the four factors to consider in evaluating whether the private organization had a close nexus to the State). Here, Plaintiff alleges that Wellpath was granted the exclusive right to provide health care to CCDC inmates, which is sufficient at the pleading stage to establish a close nexus between Wellpath and the State for *Monell* purposes.

### D. STATE LAW CLAIMS

Plaintiff brings five state law claims against Wellpath: (1) negligence; (2) violation of the Nevada Constitution; (3) negligent hiring, training, supervision,

and retention; (4) concert of action; and (5) negligent infliction of emotional distress. Wellpath argues that the negligence claim sounds in medical malpractice and should be dismissed, that the concert of action claim and negligent hiring, training, supervision, and retention claim are foreclosed by state law, and that the negligent infliction of emotional distress claim is redundant of the negligence claim.

### 1. Negligence

Wellpath argues that the negligence claim against it is essentially a medical malpractice claim, which would render it void ab initio since Plaintiff did not attach to her complaint an affidavit from a medical expert as required by NRS 41A.071. The Supreme Court of Nevada states that "[a]llegations of breach of duty involving medical judgment, diagnosis, or treatment indicate that a claim is for medical malpractice" and directs courts to "look to the gravamen or substantial point or essence of each claim rather than its form to see whether each individual claim is for medical malpractice or ordinary negligence." *Szymborski v. Spring Mountain Treatment Ctr.*, 133 Nev. 638, 642–43 (2017). If a jury can only evaluate the plaintiff's claims after presentation of the standards of care by a medical expert, then it is a medical malpractice claim. *Id.* at 642.

Here, Plaintiff alleges not that any recommended or prescribed care was improper or insufficient, but rather that Wellpath systematically failed to provide recommended and prescribed care. Plaintiff asserts that on two occasions, University Medical Center doctors recommended that Plaintiff be seen for a follow-up appointment in 1-2 weeks and that Doe Nurses and Officers, who Plaintiff alleges were controlled by Wellpath and acted pursuant to Wellpath policy, failed to follow that plan of care. (Complaint at ¶¶ 31-32, 48-49.) Plaintiff also alleges that she was prescribed antibiotics which she never received. (*Id.* at ¶¶ 43-44.) The Court agrees with Plaintiff that the gravamen of her complaint is not something that requires medical expert testimony in order to evaluate. While

the decision of whether to prescribe a certain medicine may require medical knowledge, common sense dictates that a patient should be given their medicine in a timely fashion once it has been prescribed, and therefore it is ordinary negligence, not medical malpractice, to fail to give this medicine. The same can be said for follow-up appointments. Wellpath's motion to dismiss Plaintiff's negligence claim is denied.

### 2. Negligent hiring, training, supervision, and retention

Wellpath argues that Plaintiff's negligent hiring, training, supervision, and retention claim fails under the line of cases holding that this cause of action is foreclosed by NRS 41.032(2) as a discretionary function, *e.g.*, *Plank v. Las Vegas Metro. Police Dep't*, 2016 WL 1048892, at *8 (D. Nev. Mar. 14, 2016), and because Plaintiff does not identify a particular person that Wellpath was negligent in hiring, etc. Plaintiff responds that discretionary function immunity does not apply when it is alleged that the actions taken are the result of deliberate disregard of rights and are in violation of the Constitution.[3] (ECF No. 17 at 17-18.) However, while Plaintiff does allege deliberate indifference and violation of the Constitution in other claims, Plaintiff does not explain the connection between those allegations and any allegedly negligent hiring, training, supervision, or retention. As Wellpath points out, Plaintiff does not identify a particular individual that Wellpath negligently hired or retained. Wellpath's motion to dismiss this claim is granted with leave to amend.

### 3. Concert of action

Wellpath argues that under Nevada law political subdivisions of the State are legally incapable of entering into a conspiracy, which would entail dismissal of this claim against Wellpath since Wellpath cannot conspire alone. In support of this argument, Wellpath cites a single case from this Court in 1986 stating,

---

[3] As Plaintiff suggests, it is not clear that NRS 41.032 applies to Wellpath since, as explained above, Wellpath is not an immune contractor nor an arm of the State.

8

without citation, that political subdivisions of the State are legally incapable of entering into a conspiracy. The Court does not see adequate legal basis to dismiss this claim based on that authority alone.

Wellpath also argues that this action is foreclosed by NRS 41.141(6)(a), which concerns the defense of comparative negligence. Specifically, the section provides a general rule that "the comparative negligence of the plaintiff […] does not bar a recovery if that negligence was not greater than the negligence or gross negligence of the parties to the action against whom recovery is sought[.]" That section creates an exception from that general rule for "an action based upon[ t]he concerted acts of the defendants[,]" but then defines "Concerted acts of the defendants" to "not include negligent acts committed by providers of heath care while working together to provide treatment to a patient." So, taken together, concerted acts of health care providers are the exception-to-the-exception and fall under the general rule of comparative negligence set forth in NRS 41.141(1). In any event, nothing in this section establishes that Wellpath cannot be sued for an allegation that sounds in conspiracy. Wellpath's motion to dismiss this claim is denied.

### 4. Negligent infliction of emotional distress

Wellpath argues that this claim is duplicative of Plaintiff's negligence claim and should be dismissed. However, Wellpath cites no authority that requires a negligent infliction of emotional distress claim to be subsumed into a general negligence claim, and as a general matter a plaintiff may plead alternative claims and forms of relief. Wellpath's motion to dismiss this claim is denied.

### E.  PUNITIVE DAMAGES

Wellpath argues that the claims for punitive damages against it should be dismissed under NRS 42.007, which provides that an employer cannot be liable for punitive damages unless, among other instances, the employer expressly authorized or ratified the wrongful act of the employee or the employer is

1  personally guilty of oppression, fraud, or malice, express or implied. As Plaintiff
2  points out, Plaintiff's complaint alleges that Wellpath is personally guilty viz. its
3  policies through which Plaintiff was injured, and also that Wellpath expressly
4  authorized and/or ratified the conduct of its employees. The Court will not
5  dismiss Plaintiff's claim for punitive damages at this stage.

## III. LVMPD DEFENDANTS' MOTION TO DISMISS

The LVMPD Defendants filed their motion to dismiss on March 30, 2022. (ECF No. 14.) The LVMPD Defendants argue that Sheriff Lombardo should be dismissed entirely since there are no allegations sufficient to state a claim that Sheriff Lombardo was personally involved, warranting dismissal of the individual claim against him, and the official capacity claim is redundant of the claim against LVMPD. The LVMPD Defendants also argue: (1) that Plaintiff's two § 1983 claims and two *Monell* claims are redundant as to one another; (2) the Fourth and Eighth Amendments are inapplicable since Plaintiff was a pretrial detainee; and (3) that Plaintiff's Nevada Constitution, negligent hiring, training, and supervision, and concert of action claims fail to state a claim.

Plaintiff concedes and agrees that Sheriff Lombardo can be dismissed entirely because there are no allegations of personal involvement and the official capacity claim against him can be brought as a claim against LVMPD. (ECF No. 19 at 7.) Plaintiff also concedes the inapplicability of the Fourth Amendment, but argues that her § 1983 and *Monell* claims can proceed under the Fourteenth and Eighth Amendments because some of the allegations occurred after Plaintiff was convicted and sentenced. (*Id.* at 7-9.)

### A. EIGHTH AMENDMENT

Plaintiff claims that the Eighth Amendment applies to allegations after she was convicted and sentenced in August of 2020. These allegations include the denial of Plaintiff's physical therapy exercises and the denial of follow-up appointments, which contributed to Plaintiff having a "significant deformity" in

10

her leg. (*Id.* at 4.) Plaintiff argues that her two § 1983 claims and her two *Monell* claims are not redundant in that one relates to the Fourteenth Amendment claims and the other to the Eighth Amendment.

The Court agrees with Plaintiff that the Eighth Amendment applies to the allegations following Plaintiff's conviction and sentencing. The LVMPD Defendants argue that the claims are still duplicative since they amount to one claim for deliberate indifference to serious medical needs even if the analysis employs both the Fourteenth and Eighth Amendment standards. It is well settled that a Plaintiff may plead alternative claims and forms of relief, so the Court will permit Plaintiff to bring four total claims: two § 1983 claims and two *Monell* claims, one each under the Fourteenth and Eighth Amendments. The Court agrees with the LVMPD Defendants, however, that the § 1983 claims against the institutional defendants, namely LVMPD, CCDC, and Wellpath, are duplicative of the *Monell* claims because an institutional defendant would only be liable under § 1983 under *Monell*. Therefore, Plaintiff's § 1983 claims will proceed against the individual defendants and the *Monell* claims will proceed against the institutional defendants.

### B. NEVADA CONSTITUTION

Plaintiff alleges that Defendants violated Article 1, § 6, the cruel and unusual punishment clause, as well as Article 1, § 8(2), the due process clause, of the Nevada Constitution. (Complaint at ¶¶ 173-74.) The LVMPD Defendants argue that Plaintiff's claim for violation of the cruel and unusual punishment clause fails because Plaintiff was not a convicted prisoner for the majority of her allegations and the allegations for which she was a convicted prisoner do not constitute cruel and unusual punishment as a matter of law. Plaintiff's allegations that she was denied physical therapy and follow-up appointments to her surgery are sufficient to state a claim, especially given that Plaintiff has alleged that this lack of care contributed to significant deformity in her leg.

1	The LVMPD Defendants also argue, without citation, that Article 1, § 8 is the "takings clause" of the Nevada Constitution and is therefore inapplicable. However, while subsection 3 of Article 1, § 8 of the Nevada Constitution is akin to the Takings Clause of the U.S. Constitution, Plaintiff cites to subsection 2, which is akin to the Due Process Clause of the U.S. Constitution. Plaintiff's due process claim under the Nevada Constitution mirrors her claim alleging violation of her rights under the Fourteenth Amendment of the U.S. Constitution.

### C.	REMAINING CLAIMS

The LVMPD Defendants argue that Plaintiff's negligent hiring, training, and supervision claim should be dismissed under the discretionary act immunity provisions of NRS 41.032. Unlike Wellpath, NRS 41.032 clearly applies to the LVMPD Defendants and case law establishes that the statute bars claims for negligent hiring, training, and supervision. *Plank v. Las Vegas Metro. Police Dep't*, 2016 WL 1048892, at *8 (D. Nev. Mar. 14, 2016) (collecting cases). The LVMPD Defendants' motion to dismiss this claim against them is granted without leave to amend.

Finally, the LVMPD Defendants move to dismiss the concert of action claim, but provide no argument or explanation regarding this claim. The Court will not dismiss this claim at this time.

### IV.	CONCLUSION

Wellpath's motion to dismiss (ECF No. 7) is granted with leave to amend as to the negligent hiring, training, supervision, and retention claim, and is denied in all other aspects.

The LVMPD Defendants' motion to dismiss (ECF No. 14) is granted without leave to amend as to the claims against Sheriff Lombardo, as to Plaintiff's first and second causes of action (§ 1983) against LVMPD, CCDC, and Wellpath, and as to the negligent hiring, training, supervision, and retention claim, and is denied in all other aspects.

DATED THIS 26th day of April 2023.

_____
ANNE R. TRAUM
UNITED STATES DISTRICT JUDGE