UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

| | |
|---|---|
| ASHLEY O'NEIL, | Case No. 2:22-cv-00474-ART-BNW |
| Plaintiff, | ORDER |
| v. | |
| LAS VEGAS METROPOLITAN POLICE DEPARTMENT, *et al.*, | |
| Defendants. | |

Plaintiff Ashley O'Neil sued several Defendants, including Las Vegas Metropolitan Police Department ("LVMPD"), Clark County Detention Center ("CCDC"), Joe Lombardo, Wellpath, LLC, and Doe Nurse Coco, for inadequate medical care in the Clark County Detention Center. (ECF No. 1 Exh. B.) Before the Court is LVMPD's motion to dismiss Ms. O'Neil's concert of action claim. (ECF No. 102.) For the reasons set forth in this order, the Court grants LVMPD's motion to dismiss, with leave to amend.

## I.   BACKGROUND

The following allegations are adapted from the First Amended Complaint ("FAC"). On or about December 22, 2019, Ms. O'Neil was driving her vehicle and suffered severe injuries in a crash. (ECF No. 99 at ¶ 19.) She was placed under arrest and taken by ambulance to University Medical Center Trauma, where she was diagnosed with a splenic laceration, liver laceration, acute respiratory failure, knee laceration, eyebrow laceration, laceration of right great toe without foreign body present or damage to nail, closed fracture of distal end of right tibia, closed fracture of distal end of right fibula, and displaced fracture of proximal phalanx of right great toe. (*Id.* at ¶¶ 20–22.) She received orthopedic surgery on that date, then on December 24, 2019, was cleared for discharge with a non-weight bearing

1

status for her right leg. (*Id.* at ¶¶ 23–24.) Ms. O'Neil alleges that LVMPD and/or the Clark County Detention Center ("CCDC") were instructed that she would need orthopedic surgery in 1-2 weeks for permanent surgical fixation. (*Id.* at ¶ 25.) This surgery occurred on January 3, 2020, and she was discharged back to CCDC on January 5, 2020. (*Id.* at ¶¶ 27–28.)

Ms. O'Neil alleges that upon her discharge, instructions were given to LVMPD and/or CCDC that she needed a follow-up appointment in 1-2 weeks. (*Id.* at ¶ 29.) Plaintiff alleges that she was prescribed Tylenol 325 mg tablets and was given them for seven days, at which point CCDC medical staff stopped giving her the medication despite her still being in pain. (*Id.*) Ms. O'Neil states that she was seen by CCDC medical staff on January 9, 2020, where the staples in her knee and stitches in her upper eyelid were removed. (*Id.* at ¶ 32.) Thereafter, a few days before the anticipated date of her 2-week follow-up, Ms. O'Neil asked Nurse "Coco" if the follow-up had been scheduled, and Nurse Coco allegedly responded, "we'll schedule it on our own time." (*Id.* at ¶ 33.)

Ms. O'Neil alleges that no appointment had been scheduled and that she had not been seen by doctors as of February 3, 2020, a month after her surgery. (*Id.* at ¶ 34.) She states that on February 10, 2020, she alerted custodial persons at CCDC, including Wellpath and LVMPD employees and Nurse Coco, that the staples under her cast were irritating her leg. (*Id.* at ¶ 35.) She was seen by Nurse Coco on February 12, 2020, and the cast on her leg was removed, revealing that her leg was severely swollen with two big abscesses coming up through her stitches. (*Id.* at ¶¶ 36–37.) "Defendant Employees" [sic] allegedly dug the stitches out from under the abscesses with an unknown instrument and without any anesthesia, causing fluid to leak out of Ms. O'Neil's leg. (*Id.* at ¶ 38.)

Ms. O'Neil was then taken back to University Medical Center for medical evaluation and tested positive for sepsis. (*Id.* at ¶ 39.) On February 14, 2020, Ms. O'Neil had a consultation for surgical wound infection of her right leg with likely

infected hardware, and on February 15, 2020, she underwent incision and drainage of her right ankle. (*Id.* at ¶¶ 40-41.)

Ms. O'Neil was released back into Defendants' custody on February 19, 2020, with instructions to follow up in 1-2 weeks and with a prescription for strong antibiotics which she was required to take every day for 40 days. (*Id.* at ¶ 43.) She further alleges that she was never given her required physical therapy exercises. (*Id.* at ¶ 44.) On April 1, 2020, Ms. O'Neil received the offsite follow-up appointment that she was supposed to have within 1-2 weeks of her February 19, 2020, discharge. (*Id.* at ¶ 46.) She was instructed to return for a follow-up appointment in six weeks. (*Id.* at ¶ 44.)

Fifteen weeks later, Ms. O'Neil had that follow-up appointment, where it was noted that she suffered from ankle arthritis and displayed anterior subluxation of the talus on the tibia and retained hardware. (*Id.* at ¶ 49.) Ms. O'Neil was instructed to follow up in three months. (*Id.*) On March 15, 2021, Plaintiff underwent a surgical removal of hardware and fusion of her right ankle, where it was noted that Plaintiff had "a significant deformity[,]" and a bone graft was inserted in order to stimulate new bone healing. (*Id.* at ¶ 52.)

Ms. O'Neil alleges that she has suffered permanent damage to her leg, ankle, and foot due to the deliberate indifference of Defendants. (*Id.* at ¶¶ 53–57.) Ms. O'Neil alleges that LVMPD and Wellpath "maintain unconstitutional policies and customs regarding providing emergency and/or higher-level health care to inmates in a timely manner[,]" including "not having inmates seen or evaluated by higher level medical providers even when necessary to prevent serious injury or death; allowing and training nurses to practice outside their nursing scope; refusing to transfer inmates to higher level of acuity even where necessary to prevent serious injury or death; and, a widespread custom and tolerated practice and habit of treating all inmate detainee illnesses as fabricated, feigned, or not serious until an inmate/detainee can prove otherwise, often to save money on

providers and testing." (*Id.* at ¶¶ 66–67.) She further alleges that Defendant Wellpath has a contractual relationship with LVMPD to provide medical services to detainees at CCDC. (*Id.* at ¶ 5.)

As relevant here, she also alleges that the use of private, for-profit medical companies in jails encourages cost reduction and discourages proper oversight. (*Id.* at ¶¶ 62–63.) The profit motive, according to Ms. O'Neil, "contributes significantly to the development of widespread practices, policies, and training that causes deliberate indifference to inmates' serious medical needs . . . including [disincentivizing] use of the appropriate level medical staff to evaluate illness and transfers for needed medical care", as well as "treating inmates as though their known serious needs are faked or exaggerated." (*Id.*)

LVMPD previously moved to dismiss (ECF No. 14), and the Court granted the motion without leave to amend as to the claims against Sheriff Lombardo, as to Ms. O'Neil's first and second causes of action against LVMPD, and as to the negligent hiring, training, supervision, and retention claim. (ECF No. 29.) The Court denied the motion to dismiss in all other aspects, specifically noting that LVMPD moved to dismiss the concert of action claim, but provided no argument or explanation regarding that claim. (*Id.*)

In the FAC, Ms. O'Neil names as Defendants LVMPD, Wellpath, Matthew J. Dundon, Nurse Camille "Coco" Lee, David Oliphant, Doctor Larry Williamson, and Doe Officers and Medical Staff. (*Id.* at ¶¶ 4–12.) Plaintiff brings eight claims: (1) a deliberate indifference to serious medical needs claim under the Fourteenth Amendment against Defendants Nurse Coco, Doctor Williamson, and Oliphant; (2) a *Monell* claim for failure to train against Defendants LVMPD, Wellpath, and Dundon; (3) a *Monell* claim against Defendants LVMPD, Wellpath, and Dundon; (4) a claim for violation of the Nevada Constitution against all Defendants; (5) a negligence claim against all Defendants; (6) a claim for negligent hiring, training, supervision, and retention against Defendant Wellpath; (7) a concert of action

claim against all Defendants; and (8) a claim for negligent infliction of emotional distress against all Defendants. LVMPD now moves to dismiss Ms. O'Neil's seventh claim against it, for concert of action. (ECF No. 102.) Ms. O'Neil responded (ECF No. 105), and LVMPD replied. (ECF No. 106.)

## II.    LEGAL STANDARD

A court may dismiss a complaint for "failure to state a claim upon which relief can be granted." FED. R. CIV. P. 12(b)(6). A properly pleaded complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." FED. R. CIV. P. 8(a)(2); *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). While Rule 8 does not require "detailed factual allegations," it demands more than "labels and conclusions" or a "formulaic recitation of the elements of a cause of action." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 555).

To sufficiently allege a claim, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Id.* (quoting *Twombly*, 550 U.S. at 570). In reviewing a motion to dismiss, the court accepts the factual allegations in the complaint as true. *Id.* Similarly, "bare assertions" in a complaint amounting "to nothing more than a 'formulaic recitation of the elements'" of a claim are not entitled to an assumption of truth. *Iqbal*, 556 U.S. at 680–81 (quoting *Twombly*, 550 U.S. at 555). The court discounts these allegations because "they do nothing more than state a legal conclusion—even if that conclusion is cast in the form of a factual allegation." *Moss v. U.S. Secret Serv.*, 572 F.3d 962, 969 (9th Cir. 2009). "In sum, for a complaint to survive a motion to dismiss, the non-conclusory 'factual content,' and reasonable inferences from that content, must be plausibly suggestive of a claim entitling the plaintiff to relief." *Id.* (quoting *Iqbal*, 556 U.S. at 678).

If the court grants a motion to dismiss for failure to state a claim, leave to amend should be granted unless the deficiencies of the complaint cannot be

cured by amendment. *DeSoto v. Yellow Freight Sys., Inc.,* 957 F.2d 655, 658 (9th Cir. 1992). In accordance with Rule 15(a), the court should freely give leave to amend "when justice so requires," and in the absence of a reason such as "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of the amendment, etc." *Foman v. Davis,* 371 U.S. 178, 182 (1962).

**III.    DISCUSSION**

Ms. O'Neil's seventh claim, for concert of action, alleges that Defendants acted with one another to engage in inherently dangerous activities that had a known risk of harm to persons housed at CCDC. (ECF No. 99 at 178–88.) LVMPD argues that Ms. O'Neil's concert of action claim must be dismissed because she failed to allege specific facts showing an agreement or meeting of the minds between LVMPD, Wellpath, or Wellpath's employees to violate her rights. (ECF No. 102 at 3–5.) The Court agrees.

To bring a concert-of-action claim in Nevada, Ms. O'Neil must allege that Defendants (1) engaged in tortious conduct and (2) "agreed to engage in conduct that is inherently dangerous or poses a substantial risk of harm to others." *GES, Inc. v. Corbitt,* 21 P.3d 11, 15 (Nev. 2001); *see also Abrams v. Sanson,* 458 P.3d 1062, 1070 (Nev. 2020). As explained by the Nevada Supreme Court in *GES, Inc. v. Corbitt,* mere negligence or an agreement is not enough:

> the defendants must have agreed to engage in conduct that is inherently dangerous or poses a substantial risk of harm to others. Thus, this requirement is met when the defendants agree to engage in an inherently dangerous activity, with a known risk of harm, that could lead to the commission of a tort. Mere joint negligence, or an agreement to act jointly, does not suffice.

*GES,* 21 P.3d at 15.

While the claim resembles civil conspiracy, "the tort of concert of action has traditionally been quite narrow in the scope of its application." *Dow Chem. Co. v. Mahlum*, 970 P.2d 98 (Nev. 1998), abrogated in part by *GES*, 21 P.3d at 11. Application of the doctrine has generally been confined to "isolated acts of adolescents in rural society," and was "meant to deter antisocial or dangerous behavior." *Id.* (citations and internal quotations omitted).

Ms. O'Neil generally alleges that Defendants had a pattern and practice of deliberately indifferent medical care, that eschewed regular follow ups and treated detainee illnesses as fabricated, feigned or not serious until an inmate/detainee could prove otherwise. (ECF No. 99 at ¶ 67.) She also alleges that Wellpath and LVMPD had a contractual relationship for Wellpath to provide medical services to detainees at CCDC. (*Id.* at ¶ 5.) However, these allegations are not sufficient to allege that there was a meeting of the minds or an agreement to engage in an inherently dangerous activity. At most, they show that Wellpath and LVMPD had a professional relationship, and that there was a custom of providing substandard medical care.

Ms. O'Neil also alleges, in a conclusory manner, that Defendants acted together to commit the other torts alleged in her complaint. (*Id.* at ¶¶ 178–88.) However, these bare assertions do not contain sufficient factual matter alleging any actual agreement or meeting of the minds between LVMPD and other Defendants. These allegations, even when construed as true and in the light most favorable to Ms. O'Neil, are wholly conclusory, and do not show that LVMPD entered into any agreement with Wellpath or other Defendants to engage in inherently dangerous activities.

The Court therefore finds that Ms. O'Neil has failed to state a claim for concert of action, and dismisses her seventh cause of action with leave to amend.

## IV.  CONCLUSION

IT IS THEREFORE ORDERED that LVMPD's motion to dismiss (ECF No. 102) Ms. O'Neil's seventh claim, for concert of action, is GRANTED, without prejudice, and with leave to amend.

DATED THIS 5th day of June 2026.

ANNE R. TRAUM
UNITED STATES DISTRICT JUDGE

8